## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

KHESA PINKARD,                          )
                                        )
          **Plaintiff,**                )
                                        )          **Case No. 11-CV-454-JED-PJC**
vs.                                     )
                                        )
**HILTI, INC. a Domestic For Profit**   )
**Business Corporation, and**           )
**HILTI OF AMERICA, INC., a Foreign**   )
**For Profit Business Corporation,**    )
                                        )
          **Defendants.**               )

### OPINION AND ORDER

The Court has for its consideration defendants' Motion for Summary Judgment and Brief

in Support (Doc. 52), which is at issue (see Docs. 65, plaintiff's response in opposition and 69,

defendants' reply brief).  The defendants, Hilti, Inc. and Hilti of America, Inc. (collectively,

"Hilti"), seek summary judgment as to all of plaintiff, Khesa Pinkard's, remaining claims.[1]

### BACKGROUND

This is an employment-related action removed from state court.  On December 20, 2011,

plaintiff filed a Second Amended Complaint (Doc. 11) in this Court, alleging claims against Hilti

under Title VII of the Civil Rights Act for failure to promote, retaliation, and pay disparity, as

well as a claim under the Equal Pay Act.[2]

Pinkard was hired by Hilti in 2006.  On February 1, 2008, she moved to Tulsa to continue

her employment with Hilti in the position of Regional Manager – Customer Service.  In this

---

[1]  Plaintiff has abandoned her claim for disparate impact under Title VII of the Civil Rights Act
(see Doc. 65, at 1 n.2), and dismissed her putative class action claims (see Doc. 45).

[2]   In her summary judgment briefing, Pinkard abandoned any contention that her claims were
based upon race (see Doc. 65).

position, Pinkard worked in a call center environment and supervised sales agents.  Pinkard's supervisor was Christy Graybill, who was the Division Manager, Customer Service.  The relationship between Pinkard and Graybill was not without conflict.  On August 24, 2010, Graybill placed Pinkard on a corrective action plan based upon Graybill's perception that Pinkard needed improvement in her communication with co-workers and completing assigned tasks promptly.  On December 1, 2010, Pinkard was taken off the corrective action plan, as Graybill felt that she had taken steps to correct the subjects at issue.  Pinkard remained a Regional Manager – Customer Service until July 11, 2011, when she was awarded a job as an outside sales Regional Manager in Seattle, Washington.

Pinkard consistently sought to advance her career at Hilti.  However, Pinkard claims that Hilti created roadblocks which inhibited her advancement.  Specifically, Pinkard alleges that, during her time as a Regional Manager – Customer Service in Tulsa, Hilti failed to consider her for a promotion to a Director of Rentals position in 2010, and failed to award her a promotion to a Diamond Pro Contractor Sales Manager position, for which she interviewed on January 11, 2011.  In both instances, Pinkard asserts that men were awarded the jobs for discriminatory reasons.  Pinkard also claims she was paid less than a male Regional Manager – Customer Service purely on the basis of gender.  Finally, Pinkard claims Defendants retaliated against her for complaints she made to Human Resources Representative, Melissa Harris, in August of 2010, about her supervisor, Graybill.  Pinkard brought this lawsuit on May 12, 2011, seeking redress for these alleged discriminatory practices.

### SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52.  The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012).  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).  When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id*. (quotations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 250.  In its review, the Court construes the record in

the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

ANALYSIS

### A.  Title VII Failure to Promote Claim

Pinkard's Title VII failure to promote claim is based upon Hilti's actions with respect to two positions: a Director of Rentals position allegedly awarded to Dennis Hoops and a position as Diamond Pro Contractor Sales Manager, which was awarded to Kristopher Cleveland.

Pinkard's failure to promote claim requires a showing of three elements:  "(1) she belongs to a protected class; (2) she applied for an available position for which she was qualified; [and] (3) she 'was rejected under circumstances which give rise to an inference of unlawful discrimination.'" *Tabor v. Hilti, Inc*., 703 F.3d 1206, 1216 (10th Cir. 2013) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  Absent direct evidence, Pinkard must prove discriminatory intent through the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d 1321, 1327 (10th Cir. 1999).  Under the *McDonnell Douglas* burden-shifting framework, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant. *EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1193 (10th Cir. 2000). At the prima facie stage, the Plaintiff's burden is 'not onerous,' which is evidenced by the 'small amount of proof necessary to create an inference of discrimination.'"  *Orr v. City of Albuquerque,* 417 F.3d 1144, 1149 (quoting *EEOC v. Flasher Co., Inc.,* 986 F.2d 1312, 1318 (10th Cir. 1992)).  Once a plaintiff can establish a prima facie case of discrimination or retaliation, the burden shifts directly to defendant to "articulate some legitimate,

4

nondiscriminatory reason" for the adverse employment actions which are at issue. *Chavez v. Thomas & Betts Corp*., 396 F.3d 1088, 1104 (10th Cir. 2005).  Once a defendant articulates its legitimate reasons for the adverse employment actions, the burden then shifts back to the plaintiff to show that the defendant's proffered reason for the adverse employment actions was pretext for discrimination.  "A Plaintiff can demonstrate pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's reasons for its action, which a reasonable fact finder could rationally find unworthy of credence." *Chavez*, 396 F.3d at 1104 (citing *Richmond v. ONEOK, Inc*., 120 F.3d 205, 209 (10th Cir. 1997)).  If a plaintiff presents evidence that the defendant's proffered reason for the employment decision was pretextual, i.e., unworthy of belief, plaintiff can withstand a summary judgment motion and is entitled to go to trial.  *Kendrick v. Penske Transport Servs, Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

**Dennis Hoops and the Director of Rentals Position**

Pinkard claims that, despite her interest, Hilti failed to consider her for a promotion to a "Director of Rentals" position which was allegedly given to Dennis Hoops.  Hilti argues that the change relating to Hoops was not a promotion at all, and that the position she describes as "Director of Rentals" was never an open position for which Pinkard could have applied.  Hilti has provided an affidavit demonstrating that Hoops was actually *demoted* from his former position of Director, Alternative Channels (for which he was hired in 2006) to Director, Key Accounts for Rentals and Authorized Distributors (the position plaintiff refers to as "Director of Rentals").  (*See* Docs. 69-5 and 65, at 15).  Marci Bonham, a female, was promoted over Hoops and became Director of Rentals and Authorized Distributors (formerly called Director,

Alternative Channels).   (*Cf.* Doc. 65, at 14-15 *with* Doc. 69, at 3 *and* Doc. 69-5).[3]   In other words, Mr. Hoops became a Director as to only a subpart of the former job he occupied and Ms. Bonham became his supervisor.

Pinkard has failed to make a showing that these legitimate business justifications provided by Hilti are pretextual.   Pinkard points to the fact that the position Hoops assumed, Director, Key Accounts for Rentals and Authorized Distributors, was advertised on Ladders.com, a job search website, as an available position within the company.   Hilti submitted evidence explaining that the position was listed online because, at the time, Hilti was considering replacing Hoops altogether, but ultimately decided merely to demote him.   Pinkard has not put forth any evidence to suggest this explanation is unworthy of belief.   Summary judgment is therefore appropriate as to this portion of Pinkard's failure to promote claim.

**Kris Cleveland and the Diamond Pro Contractor Position**

Pinkard asserts that Hilti promoted Kristopher Cleveland over her into the position of Diamond Pro Contractor Sales Manager because Mr. Cleveland was male.   Pinkard asserts that

---

[3]   Pinkard attempts to create a dispute of fact by alleging that Marci Bonham previously occupied the "Director of Rentals" position which was given to Hoops.   (Doc. 65-7).   Her declaration to this effect is insufficient to create a genuine dispute of fact in light of the evidence submitted by Hilti on this point.   Hilti provided the declaration of Charles Martorello (Doc. 69-5) and supporting documentation which shows that Bonham was hired by Hilti to take over for Hoops on March 15, 2010, as Director, Rentals and Authorized Distributors (*see id.*).   Hoops then assumed the role of Director, Key Accounts for Rentals and Authorized Distributors.   Thus, it would have been impossible for Bonham to have occupied the position as Pinkard suggests and she has not created a genuine issue of fact regarding Hilti's actions as to Hoops.   *Universal Money Ctrs., Inc. v. AT&T Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) ("An issue of material fact is 'genuine' if a 'reasonable jury could return a verdict for the nonmoving party.'").   Pinkard's emails demonstrate that Hoops' position was not listed on Ladders.com until October 2010 (*see* Doc. 65-8), some seven months after Hoops' demotion.   It is clear from the documents provided that Hoops was already occupying the position which Hilti listed, but Hilti chose not to make a personnel change with respect to Hoops at that time.   Thus, no promotion was possible for Pinkard at the time she sought it.

Cleveland was pre-selected for this position by Cary Evert, Chief Executive Officer of Hilti, Inc. Hilti has responded with the affidavits of Cary Evert and the hiring manager, Andrew Hunt, who interviewed Pinkard. Evert states in his affidavit that, while he had suggested Cleveland for the position, the hiring decision was entirely Hunt's. Hunt's affidavit states that he selected Cleveland for the position "based upon his superior knowledge, superior experience, technical expertise and aptitude." (Doc. 52-5). Hilti argues that these affidavits demonstrate that Pinkard lacked essential qualifications for the position or, at a minimum, show a legitimate business justification for the hiring of Cleveland. Hilti also relies on the interview feedback provided to Pinkard shortly after her interview, which states that Hunt was concerned that Pinkard needed more technical expertise and market information before she would be appropriate for the position. (*Id.*).

Even assuming Pinkard was qualified for the Diamond Pro Contractor position and thus made a prima facie showing, the evidence submitted by Hilti establishes a legitimate business justification for the selection of Cleveland. Pinkard attempts to demonstrate that Hilti's justifications are pretext primarily through her own assertions that she was more qualified for the position. "However, an employee's 'own opinions about h[er] ... qualifications [do not] give rise to a material factual dispute'" and are insufficient to show pretext. *Simms*, 165 F.3d at 1329 (quoting *Rabinovitz v. Pena*, 89 F.3d 482, 487 (7th Cir. 1996)).[4] Pinkard's argument that Cleveland was pre-selected for the position is likewise insufficient to demonstrate pretext.

---

[4] Pinkard also attempts to show pretext by stating that, during her interview with Hunt, "she was not even asked questions that would demonstrate she was deficient in [technical expertise]." (Doc. 65, at 19). This would certainly be powerful evidence of pretext, if correct. However, the evidence which Pinkard cites in support of this assertion – namely, her deposition testimony – does not reflect the statement in her brief. (*See* Doc. 65-1, at 103-04). In the cited portion of her deposition testimony, Pinkard never states that Hunt did not ask questions regarding technical expertise; indeed, there is no mention of the questions asked during her interview with Hunt. (*See id.*).

Assuming Cleveland had been pre-selected for the position, that type of pre-selection would work to the detriment of all other applicants, male and female alike. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005). Such a pre-selection argument therefore "amounts to a complaint that the application process was a meaningless formality, which 'might be inconsiderate or unfair, but it does not [imply] ... discrimination.'" *Espinoza v. Coca-Cola Enterprises, Inc.*, 167 F. App'x 743, 745 (10th Cir. 2006) (quoting *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005)). Given Pinkard's failure to make a showing of pretext, Hilti is entitled to summary judgment as to her failure to promote claim.

### B.   Retaliation

Pinkard's retaliation claim is based upon Pinkard's complaint to human resources representative, Melissa Harris, regarding Pinkard's supervisor, Christy Graybill. Pinkard complained to Harris about Graybill's alleged treatment of her, and Pinkard claims that, as a result of her complaint, she was placed on a corrective action plan ("CAP"). Pinkard further alleges that the CAP constitutes a materially adverse action under Title VII because she was prevented from promoting for the duration of the CAP, August 24, 2010, to December 1, 2010. For reasons stated below, the Court finds that a dispute of fact exists as to whether the CAP was a materially adverse action, but the Court finds Pinkard has failed to make a prima facie showing as to the remaining elements of her retaliation claim.

Under Title VII, a plaintiff must establish the following elements of a retaliation claim: "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross and*

*Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).  Hilti claims that Pinkard's claim fails on all three elements.

As to the first element, Pinkard has not submitted evidence which demonstrates that she ever complained of gender discrimination prior to being placed on the CAP. In her response brief, Pinkard states that she "complained that she felt Graybill treated her and the other females in the department differently than the males" and that these complaints "occurred on August 18, 2010 and August 20, 2010 in in-person meetings."  (Doc. 65, at 15).  Once again, the email evidence cited by Pinkard – specifically, exhibits 18 and 22 – do not support her contention.  The cited emails make no mention of disparate treatment of females.  Instead, the emails suggest that Pinkard thought Graybill – a female – treated *everyone* poorly, not just females.

As to the second element, a material dispute of fact exists as to whether the CAP constitutes an adverse action.   An "adverse employment action" is one that "affect[s] employment or alter[s] the conditions of the workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 62 (2006). Generally, it involves changes in the terms of employment, such as "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits," and usually "inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761–62 (1998).   An action is considered materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington*, 548 U.S. at 68 (internal quotation omitted).

Pinkard testified that, in her experience, being placed on a CAP constitutes a de facto barrier to promotion within Hilti.  Christy Graybill, Pinkard's supervisor during the relevant time, submitted an affidavit.  Graybill's affidavit states that Pinkard was not prevented from seeking a promotion while she was on the CAP.  A reasonable employee would likely be

dissuaded from making a complaint if they expected that it would result in the inability to promote.  As such, a factual dispute exists as to whether the CAP was an adverse action.

Finally, Pinkard has failed to demonstrate the third element for a retaliation claim.  There is an insufficient causal nexus between the CAP and Pinkard's alleged reporting of discrimination.  First, there is no evidence identified by Pinkard that would demonstrate that Graybill was aware that Pinkard had complained to Harris about her conduct or any other problem she encountered with Hilti.[5]  Second, the CAP itself states several legitimate non-retaliatory justifications for her placement on the CAP.  For example, it discusses several instances of problematic behavior in the month of August leading up to the issuance of the CAP. (Doc. 65-20).  Pinkard has not put forth any evidence which would create a dispute of fact as to these justifications for placing her on the CAP.  Accordingly, she has not demonstrated a causal connection between her complaint to Harris and the CAP.[6]

Summary judgment is granted with respect to Pinkard's retaliation claim.

**C.   Equal Pay Act Claim**

---

[5]  Pinkard's email (Doc. 65-22) which states that Pinkard heard from Becky More, who heard from her "Division Manager," that Harris' investigation into Pinkard's complaint was stopped by the "C[ustomer] S[ervice] Leadership team" is hearsay within hearsay, and is insufficient to establish Graybill's knowledge of Pinkard's complaint.  *See Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 485 (10th Cir. 1995) ("For example, hearsay testimony that would be inadmissible at trial may not be included in an affidavit to defeat summary judgment because "[a] third party's description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill.").  Notably, Pinkard did not submit any affidavit testimony from More to support her allegations regarding the investigation.

[6]  Even if Pinkard had made the required prima facie showing, which the Court has found she failed to do, the justifications stated in the CAP are non-discriminatory and Pinkard made no adequate showing of pretext.

10

Pinkard claims that Hilti discriminated against her by paying her less based on gender in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1) ("EPA").[7]

To prove a violation of the EPA, Pinkard must show that (1) she was performing work which was substantially equal to that of employees of the opposite sex, taking into consideration the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) employees of the opposite sex were paid more under such circumstances. *Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1311 (10th Cir. 2006). Were Pinkard to meet this requirement, the burden of persuasion would shift to Hilti to prove that the wage disparity was justified by one of four permissible reasons. *Id.* (citing *Tidwell v. Fort Howard Corp.*, 989 F.2d 406, 409 (10th Cir. 1993)). "These reasons are: (1) a seniority system; (2) a merit system; (3) a pay system based on quantity or quality of output; (4) a disparity based on any factor other than sex." *Id.* (citing 29 U.S.C. § 206(d)(1)). Where an employer seeks summary judgment as to an EPA claim, "they must produce sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains." *Mickelson*, 460 F.3d at 1312 (internal citation omitted).

The undisputed facts show that Pinkard was paid more than *all* of her fellow Regional Managers – Customer Service, save Edward Miller.[8] Hilti argues that there was a factor (or factors, as the case may be) other than sex which justified paying Miller more. He had over 25

---

[7]   The EPA is part of the Fair Labor Standards Act ("FLSA"). Pinkard's Second Amended Complaint (Doc. 11) purports to allege claims under both the EPA (§ 206(d)) and the FLSA (§ 216(b)), which are duplicative. (*See id.*, Third and Fifth Claims for Relief).

[8]   In her response brief, Pinkard does not contend that her EPA claim is based upon anything other than the pay disparity between herself and Mr. Miller during the time she was a Regional Manager – Customer Service. (*See* Doc. 65, at 23-29).

years of management experience; Pinkard had none.  Miller had an MBA from a prestigious school; Pinkard had no MBA.  Hilti also says it had to pay Miller more to lure him away from his prior employer, and that his position as a Regional Manager – Customer Service was merely a placeholder for him to get accustomed to Hilti's business before advancing his placement.  The undisputed evidence supports Hilti's claims about Miller's experience and background, and reflects that Hilti intended to move him up the management ladder very quickly.  Pinkard has failed to create any genuine dispute of fact as to these justifications.  In other words, Hilti has carried its burden of demonstrating that the pay disparity between Pinkard and Miller was based upon a factor other than gender.

Summary judgment is granted as to Pinkard's EPA claim.[9]

### D.   Title VII Disparate Pay Claim

Pinkard also asserts a claim against Hilti under Title VII for an alleged pay disparity based upon gender.  On a Title VII pay disparity claim, "the employer need only proffer a legitimate, nondiscriminatory reason" for the disparity.  *Mickelson*, 460 F.3d at 1312.  Hence, this claim fails for the same reasons as Pinkard's EPA claim.  As discussed above, Hilti has shown that there was ample legitimate non-discriminatory justification for the pay disparity between Miller and Pinkard.  Pinkard has not put forth evidence that would demonstrate pretext.

Summary judgment is granted in favor of Hilti as to Pinkard's Title VII pay disparity claim.

**IT IS THEREFORE ORDERED** that Hilti's Motion for Summary Judgment and Brief in Support (Doc. 52) is **granted**.  A separate judgment is entered herewith.

---

[9]   Hilti argues that Pinkard's EPA claim is barred by the statute of limitations.  In light of the Court's finding that Pinkard's claim fails on its merits, the Court needn't address the statute of limitations defense.

**SO ORDERED** this 11th day of June, 2013.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE